## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-cr-00303(ABJ) – I** |
| **v.** | : | |
| | : | |
| **MICHAEL JOSEPH RUSYN,** | : | **40 U.S.C. § 5104(e)(2)(G)** |
| | : | |
| **Defendant.** | : | |

**FILED**

**SEP 1 3 2021**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

### STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Michael Joseph Rusyn, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of

7. J. R.

09-08-21

the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5.      At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6.      At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

Y. J. R.

09 - 08 - 21

Case 1:21-cr-00303-ABJ   Document 34   Filed 09/13/21   Page 3 of 6

7.      Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### Michael Joseph Rusyn's Participation in the January 6, 2021, Capitol Riot

8.      On January 6, 2021, defendant Rusyn entered the U.S. Capitol building and remained within for approximately one hour. The defendant knew at the time he entered the U.S. Capitol Building, and while he was inside, that that he did not have permission to enter the building and the defendant paraded, demonstrated, or picketed.

9.      On the morning of January 6, 2021, the defendant traveled from Pennsylvania to Washington, D.C., by bus. The defendant traveled with Deborah Lynn Lee and others.

10.      By approximately 2:10 p.m., the defendant stood on the East Side of the Capitol building, near the eastern, double doors at the top of the Capitol steps, leading to the rotunda. He was in a crowd of people, close enough to the crowd to see the front of the doors. A video that the defendant uploaded to Facebook at 2:10 p.m., and a photo that the defendant uploaded to Facebook

M. J. R.
09 - 08 - 21

at 2:16 p.m., capture these doors, including of windowpanes that would—shortly thereafter—be smashed in by members of the crowd.

11.     Beginning at approximately 2:20 p.m., and continuing through at least approximately 2:24 p.m., members of the crowd began smashing several of the windowpanes of these doors. At approximately 2:25 p.m., another rioter opened one of the double doors from the inside; thereafter, that person and several other rioters opened this door widely enough to allow members of the crowd to breach the door and enter the Capitol.

12.     At approximately 2:27 p.m., Deborah Lynn Lee entered the Capitol building through the breached door. She turned back across the threshold and extended her hand to the defendant, who took her hand and pulled himself through the crowd, across the threshold and into the Capitol. The two were among the first thirty to forty people to enter the Capitol after the breach of this door. Together, they proceeded forward, immediately, into the Capitol rotunda.

13.     Shortly thereafter, the defendant and Lee joined a large crowd of people, gathered in a hallway outside of the chamber of the House of Representatives ("the House chamber"). Initially, the group was stopped by a group of approximately ten officers employed by the U.S. Capitol Police Department. Members of this group demanded that officers stand aside and allow them access to the House chamber. At various times, members of the group shouted "Tell Pelosi we're coming for that b****," called the police officers traitors, and chanted "Stop the Steal" and "We want Trump." Within this crowd, the defendant and Lee stood approximately 10 feet from the front of the group, in a position to see and hear what was happening at the front. The defendant and Lee participated in chanting "We want Trump," and held up their cellular phones in an apparent attempt to record this group's encounter with police.

Ý. J. R.
09-08-21

14.     Over the course of about seven minutes, this crowd swelled until it tightly packed the hallway. Approximately seven minutes after the crowd formed, the members at the front of the crowd surged forward against the line of police, pushing them back. The defendant and Lee moved forward, walking with the crowd, as it broke through the police line.

15.     This crowd moved forward into a second hallway, moving toward a door that led into the House chamber. The defendant and Lee moved deeper within this crowd toward the door to the House chamber. Ultimately, this group did not breach the door, and eventually dispersed.

16.     On February 17, 2021, the defendant was interviewed by a Task Force Officer and an FBI Special Agent. During that interview, the defendant said that he traveled to Washington, D.C. by boarding a bus in Jessup, Pennsylvania a bus at approximately 5:00 a.m., and that he did not personally know anyone on the bus. This was untrue: the defendant and Deborah Lynn Lee rode to Washington, D.C. together on the same bus. And, indeed, the defendant's phone contained numerous photographs and video of Lee outside the Capitol building, which it appeared had been recorded by the defendant, as well as numerous text messages between the defendant and Lee.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By:     /s/ Michael J. Romano
MICHAEL J. ROMANO
Trial Attorney, Detailee
IL Bar No. 6293658
555 4th Street, N.W.
Washington, D.C. 20530
202-262-7850
michael.romano@usdoj.gov

Page 5 of 6

M. J. R.
09-08-21

## DEFENDANT'S ACKNOWLEDGMENT

I, Michael Joseph Rusyn, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 09-08-21

Michael Joseph Rusyn
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 9/8/2021

Andrea Bergman
Attorney for Defendant

M.J.R.
09-08-21