UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-cr-303 (ZMF) |
| | : | |
| DEBORAH LYNN LEE, | : | |
| | : | |
| Defendant. | : | |

UNITED STATES' OPPOSITION TO
DEFENDANT'S MOTION TO MODIFY CONDITIONS OF RELEASE

The United States of America, by and through the undersigned Assistant U.S. Attorney, respectfully asks this Court to deny Deborah Lee's ("defendant") motion to modify her conditions of release to allow her to travel to Washington, D.C. (ECF No. 146.) Specifically, the defendant asks this Court to travel to the District of Columbia for the purpose of attending the Presidential Inauguration on January 20, 2025. *Id*. at 2. The defendant presents a danger to the D.C. community, including the very law enforcement officers who defended the Capitol on January 6, 2021, and continue to serve the citizens of the District.

**FACTUAL BACKGROUND**

On January 6, 2021, thousands of rioters took part in an attack on the U.S. Capitol to stop the certification of the results of the 2020 presidential election. These rioters forced their way into the U.S. Capitol building, requiring elected officials and their staff to flee or shelter in place and resulting in hundreds of injured officers and multiple deaths.

After the 2020 Presidential election, Deborah Lee traveled with others to Washington, D.C., to "stop the steal" and prevent Congress from certifying the electoral results. In the days leading up to the riot, Lee posted several statements on social media, including calling for the execution of people she perceived as her political opponents and stating, "I'm all for cutting off

1

[Vice President Pence's] head."

On January 6, 2021, Lee was part of the crowd that had gathered at the bike-rack barriers that marked the east perimeter. She joined the rioters who broke through the barrier and faced off with an outnumbered group of police officers who tried to keep the rioters out of the Capitol building. When she was a few feet away from the east Rotunda doors, she saw a rioter hitting and damaging the east Rotunda doors. While the rioter damaged the door, Lee urged other rioters to pass forward a stick that could be used to further damage and break down the doors. The rioters overwhelmed the outnumbered officers and breached the east Rotunda doors multiple times. Lee was one of the first 30 or 40 people who forced their way into the building. She was in the building for nearly an hour and made it as far as the House Chamber doors, where officers drew their guns to hold the rioters back. Members of Congress continued their evacuation from the building around this time. Lee remained inside despite officers giving her explicit instructions to evacuate and directions on how to leave the building.

After she was forced out of the building, Lee remained within the restricted area. She boasted about what she had done: "We f*cking did it. Right inside. We f*cking did it. It's our house. We f*cking did it. Snorted some awesome f*cking pepper spray . . . We used a fire extinguisher to break the glass. To get in. But then they drew guns . . . We went right in through this door and went straight in. Probably in there for an hour. We broke right through the front and went right in." Lee even climbed a police vehicle and continued to unlawfully demonstrate within the restricted area.

On August 16, 2021, Lee was placed on personal recognizance and her release is subject to certain conditions, including staying out of Washington, D.C., except for business before the Court or the Pretrial Services Agency. This condition is necessary to ensure the safety of the

community. Lee's participation in the January 6, 2021, riot justifies this restriction. Accordingly, the Court should deny Lee's motion.

## ARGUMENT

### I.  Applicable Authority

Under the Bail Reform Act, if a judicial officer determines that release under two standard conditions (not committing crimes and cooperating in the collection of DNA) "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," the judicial officer may impose additional conditions. 18 U.S.C. §§ 3142(b), (c)(1). In that event, the judicial officer shall release the defendant "subject to the least restrictive further condition, or combination of conditions" that "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). The Court is authorized to impose "any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B)(xiv).

In determining appropriate conditions of release, the judicial officer considers factors including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g) ("Section 3142(g) factors"). The judicial officer may amend a release order "at any time." 18 U.S.C. § 3142(c)(3).

### II.  The Court Should Not Modify the Defendant's Release Conditions

Lee asks the Court to modify her conditions of release to allow her to travel to Washington, D.C. on January 20, 2025. The United States opposes because Lee is already subject to the "least

3

restrictive" combination of conditions necessary to ensure the safety of the community. 18 U.S.C. § 3142(c)(1)(B). Lee was not required to post bond, and is not subject to home detention, a curfew, or GPS monitoring; instead, she must submit to supervision by Pretrial Services, and cannot possess firearms. Together with these relatively limited conditions, a travel restriction to prevent Lee from returning to the scene of the crime creates the least restrictive combination of conditions required to mitigate the danger that she poses to the community and to law enforcement officers.

The restriction on unauthorized travel to the District of Columbia is well-reasoned, given the defendant's alleged conduct on January 6, 2021, and the Court's need to ensure public safety. The last organized event the defendant attended in Washington, D.C., spiraled into a full-scale riot. This was the scene of her charged crime — disorderly, disruptive conduct which contributed to the disruption of the peaceful transition of power.

The nature and circumstances of the offenses in Lee's case and the evidence in support of the charged offenses are serious. This Court found defendant guilty of the charged offenses after seeing extensive video and photographic evidence of her conduct. This weighs heavily against her motion.

In addition, Lee's trip is not related to business before the Court, consultation with her attorney, or to meet with PSA. She is scheduled to appear in person for sentencing on January 27, 2025. She asks to be allowed to travel to D.C. from January 19 to January 20, 2025, for the sole purpose of attending the inauguration of President-Elect Donald Trump. Tens of thousands of demonstrators are reportedly planning to march in D.C. that weekend.[1] The inauguration itself will be attended by elected officials that Lee targeted with her conduct and violent rhetoric. This trip

---

[1] Tim Dickinson, Activists Gear Up to Counter Trump's Inauguration, Rolling Stone (January 10, 2025), https://www.rollingstone.com/politics/politics-features/trump-inauguration-peoples-march-protest-1235230466/.

would put Lee in a politically charged environment similar to the one that led to the January 6, 2021, attack on the U.S. Capitol. People visiting Washington, D.C., to peacefully demonstrate or respectfully celebrate are entitled to be safe in this city, free from the possibility that belligerent actors will once again disrupt the peaceful transfer of power in this country.

One of the most compelling reasons to deny Lee's motion is that allowing her travel to Washington, D.C., places Capitol police officers in danger. Many of the same officers from January 6, 2021, will be at the Capitol on January 20, 2025, and they will be tasked with doing the same thing they were tasked with on January 6, 2021: trying to control a crowd to protect the nation's capital. Allowing Lee to return to Washington, D.C., specifically the Capitol building and its grounds, could put her face to face with the officers that were attacked by the mob Lee joined. Allowing her return risks that she will disregard the law again in exactly the same way she did four years ago. Her return would also create an absurd situation—Lee's presence in D.C. was restricted for years to keep the community safe, but in a few days, she would be allowed to return to attend a ceremony that demands heightened security. She should not be allowed to return.

At least one other court in this district has ruled against an identical request by a January 6, 2021, rioter to come to the District of Columbia for the 2025 presidential inauguration. *See United States v. Belliveau*, 24-cr-327-TJK, Minute Order (1/2/2025).

## **CONCLUSION**

For the reasons described above, the United States respectfully requests that this Court to deny Lee's motion to modify condition of release.

                                 MATTHEW M. GRAVES
                                 UNITED STATES ATTORNEY
                                 D.C. Bar No. 481052

By: */s/ Carlos A. Valdivia*
     CARLOS A. VALDIVIA
     D.C. Bar No. 1019242
     Assistant United States Attorneys
     601 D Street, NW
     Washington, D.C. 20530
     (202) 252-7508
     Carlos.Valdivia@usdoj.gov